# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 20, 2009

Charles R. Fulbruge III
Clerk

No. 08-60792

NEW YORK GUANGDONG FINANCE INC,

Petitioner-Appellant

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent-Appellee

Appeal from a Decision
of the United States Tax Court

Before HIGGINBOTHAM and STEWART, Circuit Judges, and *ENGELHARDT,
District Judge.

CARL E. STEWART, Circuit Judge:

New York Guangdong Finance, Inc. ("Guangdong") appeals the Tax
Court's judgment sustaining in part the Commissioner of Internal Revenue's
("Commissioner") notice of deficiency for withholding tax deficiencies and
additions to tax. We AFFIRM.

---

* District Judge of the Eastern District of Louisiana, sitting by designation.

## I. BACKGROUND

During the 1990s, Guangdong engaged in loan transactions with two foreign corporations, Guangdong International Trust & Investment Corporation ("GITIC") and Guang Xin Enterprises, Ltd. ("GXE"). GITIC, a financial institution, was incorporated in the People's Republic of China and was wholly owned and controlled by the Chinese government. It was also a 50 percent shareholder of Guangdong during the relevant period. GXE, a trading company and a wholly owned subsidiary of GITIC, was incorporated in Hong Kong. During the years at issue, GXE's head office was located in Hong Kong. GXE shared this office with GITIC employees, although GXE's employees sat in separate rooms from GITIC employees.

In 1990, Guangdong borrowed $2 million from GXE. The loan provided for a term of one year, which could be extended for an additional year. The loan agreement listed GXE as the sole lending party. GXE submitted a Form W-8, Certificate of Foreign Status, to Guangdong notifying Guangdong that GXE was not a U.S. citizen or resident.

In 1994, Guangdong borrowed $2 million from GITIC. The loan agreement provided for a two-year term. GITIC was listed as the sole lending party.

On its Forms 1120, U.S. Corporation Income Tax Returns, for 1994, 1995, and 1996, Guangdong claimed deductions for interest payments made during those years. Guangdong attached Form 5472, Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business, to its 1994 tax return, but not to its 1995 or 1996 returns. In its 1994 Form 5472, Guangdong stated that GXE principally conducted its business in and filed its income tax returns as a resident of Hong Kong. Guangdong reported that it paid GXE $99,145 of interest in 1994 on its $2 million loan.

2

In a 1998 letter, Guangdong provided its accountant with information on interest payments in response to an Internal Revenue Service ("IRS") Form 4564, Information Document Request. The letter stated that: (1) with respect to the loan from GXE, Guangdong had paid $164,762 in interest in 1995 and $139,798 in interest in 1996, and (2) with respect to the GITIC loan, Guangdong had paid $177,010 in interest in 1995 and $139,798 in interest in 1996.

In 1999, Guangdong filed a Form 1120X, Amended U.S. Corporation Income Tax Return, for 1994, 1995, and 1996. Guangdong attached a Form 5472 for each of the years at issue. The amended 1994 Form 5472 indicated that Guangdong had received an additional $2 million loan from GXE in 1994. The 1995 and 1996 Forms 5472 reported that Guangdong maintained the $4 million loan balance with GXE through 1996. The Forms 5472 stated that Guangdong had paid interest to GXE of $118,052, $341,772, and $99,666, for the years 1994, 1995, and 1996, respectively. None of the Forms 5472 indicated that Guangdong made interest payments to GITIC.

On the advice of its president, Lawrence Wong ("Wong"), Guangdong never filed a Form 1042, Annual Withholding Tax Return for U.S. Source Income of Foreign Persons, or a Form 1042-S, Foreign Person's U.S. Source Income Subject to Withholding, for any of the years in issue. Wong had worked as a certified public accountant and a financial manager before joining Guangdong in 1992.

In 2004, the IRS issued a notice of deficiency to Guangdong, in which the IRS determined that Guangdong was liable for withholding tax deficiencies and additions to tax for 1994, 1995, and 1996. The notice stated that Guangdong had made interest payments to GXE in the amount of $118,052, $341,772, and $99,666 for the years 1994, 1995, and 1996, respectively. Those numbers corresponded to the amounts Guangdong reported in its Forms 1120X for 1994, 1995, and 1996. Based on these reported interest payments, the IRS determined that Guangdong had unpaid withholding tax liabilities of $35,416 for 1994,

$102,532 for 1995, and $29,900 for 1996. The IRS also determined that Guangdong was liable for additions to tax of $8,854 for 1994, $25,663 for 1995, and $6,727 for 1996 for failing to file Forms 1042. Finally, the IRS determined that Guangdong was liable for an addition to tax of $7,475 for failure to timely pay the amount owed for its 1996 return.

Guangdong petitioned the Tax Court for a redetermination of the proposed deficiencies and additions to tax. After a trial, the Tax Court sustained in part the Commissioner's asserted deficiencies. The court determined that Guangdong had received only one $2 million loan. The court sustained the Commissioner's determination that Guangdong had paid GXE interest of $118,052 in 1994. The court also held that $177,010 of the $341,772 reported as paid to GXE in 1995 was actually paid to GITIC, and thus exempt from U.S. taxation under the Agreement for the Avoidance of Double Taxation and the Prevention of Tax Evasion With Respect to Taxes on Income ("China Agreement"). With respect to 1996, the court determined that only $77,099 of the $99,666 reported on the 1996 Form 5472 represented interest paid to GXE. The court concluded that the interest paid to GXE was not exempt from U.S. taxation and, therefore, should have been subject to withholding tax. Finally, the court sustained the Commissioner's determination of additions to tax.

## II. DISCUSSION

On appeal, Guangdong raises three arguments: (1) the Tax Court erred when it assigned Guangdong the burden of proof in determining that the Commissioner's determinations are erroneous; (2) it was not required to withhold tax on loan payments to GXE because the China Agreement exempted Guangdong from the usual requirement to withhold tax on such payments; and (3) it should not be liable for additions to tax because its failure to file a tax return was excused by its reliance on advice from its president.

We review a Tax Court's findings of fact for clear error and issues of law de novo. *Green v. Comm'r*, 507 F.3d 857, 866 (5th Cir. 2007). We review its discretionary rulings for abuse of discretion. *Bilski v. Comm'r*, 69 F.3d 64, 67 (5th Cir. 1995). In this case, we affirm all the Tax Court's rulings.

A.    Burden of Proof

The Commissioner's determinations with respect to a taxpayer's withholding tax liabilities and additions to tax are presumed correct, and the taxpayer bears the burden of proving that these determinations are erroneous. *Welch v. Helvering*, 290 U.S. 111, 115 (1933); *Payne v. Comm'r*, 224 F.3d 415, 420 (5th Cir. 2000). If a taxpayer establishes that an assessment is "arbitrary and erroneous," the burden then shifts to the government to prove the correct amount of taxes owed. *Carracci v. Comm'r*, 456 F.3d 444, 457 (5th Cir. 2006).

Guangdong argues that the Commissioner's notice of deficiency was arbitrary and erroneous because it grouped together loans from both GXE and GITIC in determining Guangdong's tax deficiency; therefore, the burden of proof shifts to the Government. While the Commissioner did incorrectly include interest paid to GITIC in its notice, as the Tax Court noted, nothing in the record indicates that the determination was arbitrary. Indeed, the Commissioner based its determinations on the information Guangdong itself reported in its Forms 5472. The Commissioner did not act arbitrarily when it relied on information provided to it by Guangdong under penalties of perjury. Therefore, the Tax Court correctly found that the burden of proof remained with Guangdong.

B.    Withholding Tax on Loan Payments

I.R.C. § 881(a) imposes a 30 percent tax on interest received from U.S. sources by a foreign corporation to the extent that the interest is not effectively connected with trade or business within the United States. Section 1441 requires that the entity paying the interest to a foreign corporation must deduct

and withhold the tax from the interest payment. If the paying entity does not do so, it is liable for the tax under § 1461.

I.R.C. § 894(a) requires that the Code be applied with due regard to any treaty obligation of the United States. Section 884(e)(1) clarifies that foreign corporations are not exempt from United States income taxation under a treaty unless the treaty is an income tax treaty and the corporation is a qualified resident of such foreign country. A "qualified resident" is defined as any foreign corporation that is a resident of a foreign country unless (1) 50 percent or more of the stock of such corporation is owned by individuals who are not residents of the foreign country and who are not United States citizens or resident aliens, or (2) 50 percent or more of its income is used to meet liabilities to persons who are not residents of the foreign country or citizens or residents of the United States. I.R.C. § 884(e)(4)(A).

Article 1 of the China Agreement provides that the treaty shall apply only to persons who are residents of one or both of the Contracting States, that is, the People's Republic of China and the United States. Article 4 defines a resident of China as a person who, under the laws of China, is "liable to tax therein by reason of his domicile, residence, place of head office, place of incorporation or any other criterion of a similar nature."[1]

Article 10(3) of the China Agreement exempts certain interest from taxation. That provision states:

> [I]nterest arising in a Contracting State and derived by the government of the other Contracting State, a political subdivision or local authority thereof, the Central Bank of that other Contracting State or any financial institution wholly owned by that government, or by any resident of the other Contracting State with respect to debt-claims indirectly financed by the government of that other Contracting State, a political subdivision or local authority

---

[1] For purposes of the treaty, Hong Kong was not considered a part of China during the years at issue because China's tax laws did not apply at that time in Hong Kong.

thereof, the Central Bank of that other Contracting State or any financial institution wholly owned by that government, shall be exempt from tax in the first-mentioned Contracting State.

Guangdong argues that the China Agreement exempts interest paid to GXE from withholding tax because (1) GXE is a resident of China; (2) GXE is an agent of GITIC, a resident of China; and (3) the loan from GXE was, in substance, a loan from GITIC. Ultimately, these arguments are unavailing.

*1. GXE's Residency*

Guangdong argues that the China Agreement applies to GXE because GXE is a resident of China. During pre-trial proceedings, however, the Tax Court granted in part the Commissioner's motion in limine precluding Guangdong from raising GXE's residency as an issue at trial. As the Tax Court correctly noted, Guangdong did not raise the issue of GXE's residency until its pre-trial memorandum, thus preventing the Commissioner from conducting sufficient discovery on the issue. The Tax Court did not abuse its discretion in excluding the issue. *Bilski*, 69 F.3d at 67.

Even if Guangdong properly raised the issue of GXE's residency, all of the evidence suggests that GXE is a resident of Hong Kong. GXE was incorporated in Hong Kong. Its principal place of business was Hong Kong. Guangdong's Forms 5472 reported that GXE principally conducted its business in and filed its income tax returns as a resident of Hong Kong.

Because GXE is not a resident of China and Guangdong failed to timely raise the issue, the China Agreement does not apply to the transaction in question. Therefore, the Tax Court correctly found that the China Agreement did not exempt Guangdong from the withholding tax on its interest payments to GXE.

*2. The "In Substance" Argument*

Guangdong also argues that the loan from GXE was in substance a loan from GITIC. Under this line of argument, the loan from GXE should be treated as a loan from GITIC, a Chinese resident, thereby exempting it from withholding tax under the China Agreement. This argument is unpersuasive.

Taxpayers are generally bound by the form of the transaction they have chosen. *Framatome Connectors USA, Inc. v. Comm'r*, 118 T.C. 32, 47 (2002). The substance of a transaction may prevail, however, when a taxpayer's "reporting and actions show an honest and consistent respect for the substance of a transaction." *Estate of Weinert v. Comm'r*, 294 F.2d 750, 755 (5th Cir. 1961). Here, the Tax Court correctly noted that Guangdong's reporting and actions fully support its finding that the loan from GXE to Guangdong was not in substance a loan from GITIC. The loan agreement was signed by a GXE representative, was issued on GXE letterhead, listed GXE as the lender and made no mention of GITIC. Guangdong's general ledger segregated and identified interest payments made to GXE, and Guangdong paid interest directly to GXE. All of Guangdong's Forms 5472 for the years in question reported that Guangdong paid interest to GXE. Accordingly, we affirm the Tax Court's ruling.

*3. The Agency Analysis*

Finally, Guangdong argues that GXE was an agent or conduit of GITIC in connection with GXE's loan. If GXE was an agent of GITIC, then, Guangdong argues, the China Agreement applies to the loan transaction and exempts GXE from the withholding tax. This argument is also unconvincing.

"[I]t is uncontested that the law attributes tax consequences of property held by a genuine agent to the principal." *Comm'r v. Bollinger*, 485 U.S. 340, 349 (1988). In *National Carbide Corp. v. Commissioner*, the Supreme Court stated that, in determining whether a corporation is an agent of another, a court should consider "whether the corporation operates in the name and for the

account of the principal, binds the principal, by its actions, transmits money received to the principal, and whether receipt of income is attributable to the services of employees of the principal and to assets belonging to the principal." *Nat'l Carbide Corp. v. Comm'r*, 336 U.S. 422, 437 (1949). The subsidiary's agency relationship must not be dependent upon the fact that it is owned by the principal. *Id.* The agent's business purpose "must be the carrying on of the normal duties of an agent." *Id.* In *Commissioner v. Bollinger*, the Supreme Court declined to "parse the text of *National Carbide*" and held that it is "reasonable for the Commissioner to demand unequivocal evidence of genuineness in the corporation-shareholder context." *Bollinger*, 485 U.S. at 349.

The Tax Court correctly held that the record reflects no credible evidence that GXE was acting as GITIC's agent in making the loan to Guangdong. Nothing in the loan agreement suggests that GXE was acting as GITIC's agent. GITIC's later annual reports do not state that GXE is GITIC's agent. There is no evidence that GITIC guaranteed GXE's debt or controlled anything about the GXE loan. In sum, Guangdong has provided no evidence that GXE meets any of the agency factors discussed in *National Carbide Corp.* Therefore, the Tax Court correctly held that GXE was not acting as GITIC's agent with respect to its loan to Guangdong.

C. <u>Additions to Tax</u>

Under I.R.C. § 6651(a)(1), an addition to tax may be imposed for failure to file a tax return, unless the taxpayer shows that such failure is due to reasonable cause. "[W]hether the elements that constitute 'reasonable cause' are present in a given situation is a question of fact, but what elements must be present to constitute 'reasonable cause' is a question of law." *Roberts v. Comm'r*, 860 F.2d 1235, 1241 (5th Cir. 1988) (citing *United States v. Boyle*, 469 U.S. 241, 250 n.8 (1985)). This court reviews the Tax Court's findings "regarding the

existence or presence of circumstantial factors which might give rise to reasonable cause under the clearly erroneous standard." *Id.* at 1242.

To demonstrate reasonable cause, a taxpayer "must show that he exercised 'ordinary business care and prudence.'" Treas. Reg. § 301.6651-1(c)(1). "When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice." *Boyle*, 469 U.S. at 251.

In this case, the IRS found Guangdong liable for additions to tax for failure to file Forms 1042, Annual Withholding Tax Return for U.S. Source Income of Foreign Persons, for 1994, 1995, and 1996. Guangdong argues that its failure to file the Forms 1042 was due to reasonable cause because: (1) its very obligation to file the returns is the issue being litigated in this case and (2) it reasonably relied on the advice of Wong, its president and a former CPA, who believed that the interest payments to GXE were not subject to withholding tax.

As the Tax Court correctly noted, Guangdong's argument fails for a number of reasons. First, there is no evidence that Guangdong was told that it need not file Forms 1042. Guangdong points out that Wong advised it that the interest payments to GXE were not subject to withholding. This fact, however, is irrelevant to whether Guangdong was required to file a Form 1042. The applicable Treasury Regulations require a taxpayer to file a Form 1042 even if the interest paid is exempt from tax under a treaty. Treas. Reg. § 1.1461-1(c)(2)(I). Therefore, even if a tax professional advised Guangdong that its interest payments to GXE were exempt from taxation under the China Agreement, Guangdong would still be liable for failing to file Forms 1042.

Second, the record contains no evidence that Guangdong relied on the advice of a competent professional in deciding not to file the Forms 1042 for the years in question. Wong admitted that Guangdong had received no written advice on the subject of withholding tax liability under the China Agreement.

Wong himself was not an employee of Guangdong until August 1996, after the Forms 1042 for 1994 and 1995 were due.

For these reasons, the Tax Court was not clearly erroneous when it determined that Guangdong failed to establish reasonable cause for failure to file Forms 1042 for the years at issue. Therefore, we affirm the Tax Court's holding that Guangdong is liable for additions to tax for each of the years in issue.

## III. CONCLUSION

In sum, the Tax Court correctly found that the burden of proof remained with Guangdong. Guangdong's interest payments to GXE were not exempt from the withholding tax under the China Agreement because the China Agreement did not apply to GXE, a Hong Kong resident. The record supports the Tax Court's conclusion that GXE was not an agent for GITIC and that the loan from GXE was not in substance a loan from GITIC. The Tax Court's finding that Guangdong was liable for addition to tax for each of years in issue was not clearly erroneous. Accordingly, we affirm the well-reasoned rulings of the Tax Court.